IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| AMERICAN SERVICE INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | ) |
| v. | ) Case No. 16-0048-CV-W-FJG |
| | ) |
| FIRST CLASS MEDICAL TRANSPORTATION, INC., n/k/a EXPRESS MEDICAL TRANSPORTATIONS, INC., et al., | )<br>)<br>)<br>) |
| Defendants. | ) |

**ORDER**

Pending before the Court is Plaintiff's Motion for Summary Judgment (Doc. No. 56).

**I.  Background**

Plaintiff American Service Insurance Company ("ASI") filed the present declaratory judgment action on January 24, 2016, seeking a declaration that it owes no duty to defendant First Class Medical Transportation, Inc., n/k/a/ Express Medical Transportation, Inc. ("First Class") with respect to the claims presented by TZ, a minor, or to indemnify First Class for its liability, if any, to TZ, a minor, resulting from the shooting death of Michel Ziade, committed by Willie Parker on July 28, 2015.  Plaintiff argues that the relevant insurance policy contains an Exclusion for Assault or Battery which unambiguously excludes coverage for the shooting death of Mr. Ziade.

On April 21, 2017, plaintiff moved for summary judgment.  When defendants did not timely respond to the motion for summary judgment, the Court ordered them to show cause on or before May 23, 2017, why summary judgment should not be granted for the reasons stated by plaintiff.  On May 22 and May 23, 2017, defendants TZ and First Class

respectively filed responses to the Court's Order to Show Cause. Defendant TZ indicated he cannot oppose the motion for summary judgment consistent with the requirements of Fed. R. Civ. P. 11(b). See Doc. No. 60. Similarly, defendant First Class indicated that it cannot oppose plaintiff's motion for summary judgment consistent with the requirements of Fed. R. Civ. P. 11(b). See Doc. No. 61. Accordingly, the Court will consider below whether to grant the unopposed motion for summary judgment.

## II. Facts[1]

Plaintiff ASI is an insurance company which provided a policy of insurance to defendant First Class. Defendant First Class is a medical transportation company, whose business is to provide non-emergency medical transportation services. Kristen Ziade is the sole owner of the business. Ms. Ziade is also the mother of defendant TZ, who is seven years old. Ms. Ziade was married to Michel Ziade (the decedent). Together, they started Defendant First Class, with Michel Ziade being employed as a manager of the company, with his duties including maintenance of vehicles, hiring and firing drivers, marketing and obtaining new clients. Defendant First Class is operated primarily based out of Ms. Ziade's home, and employs approximately 25 people. One of the employees is Mindy Willis, who works in the office performing administrative tasks, and dispatching.

Willie Parker was employed by Defendant First Class as a driver. Ms. Ziade knew Mr. Parker from a prior employer. She contacted him and invited him to interview for the position of driver with Defendant First Class. Michel interviewed Mr. Parker. Following the

---

[1] All facts are taken from plaintiff's statement of facts, Doc. No. 58.

interview, Ms. Ziade performed a background check on Willie Parker. Three checks were made including criminal background, driving record, and sexual offenses, and he cleared all of those checks. Michel checked Mr. Parker's references and gave him a driving test. His references checked out and he passed the driving test. He was then employed by First Class as a driver. While employed as a driver by Defendant First Class, Mr. Parker was supervised by both Michel and Kristen Ziade.

Ms. Ziade identified deposition exhibit 2 as the Plaintiff's policy issued to Defendant First Class. Ms. Ziade testified that the policy was endorsed to remove the Sexual and/or Physical Abuse Liability Coverage Form, before the death of Michel Ziade. She and Michel made this change because First Class had stopped doing business with Logisticare, a Medicaid transportation company in Missouri, which required this coverage. Ms. Ziade instructed her assistant Mindy Willis to cancel or remove this coverage. Via e-mail correspondence dated May 12, 2015, Mindy Willis requested the removal of the Sexual and/or Physical Abuse Liability Coverage Form. The actual policy endorsement appears at the second, third and fourth pages of Exhibit B-2. It states that the endorsement is effective May 8, 2015. It states that the following form(s) have been deleted: GL 00 01 01/09 Sexual and/or Physical Abuse Liability Coverage Form. It states that the following form(s) have been added: CG 21 46 07/98 Abuse Or Molestation Exclusion. It further states that all other terms and conditions of the policy remain the same.

Ms. Ziade testified that Willie Parker had been employed by Defendant First Class for about two years prior to the shooting. About one month before the shooting, Mr. Parker

3

asked Michel to loan him some money. Mr. Parker asked for $3,000, and Michel decided to loan him $1,500. They planned to deduct $200 per week from his paycheck until the loan was repaid. About two weeks before the shooting, Mr. Parker started acting strange. When customers would get into the van and ask his name, he would say his name was God or he would say his name was Driver. He started loading wheelchair-bound patients into the van backwards, facing the rear instead of facing forward. Michel spoke to Mr. Parker, and told him to load the customers properly and to give his real name.

On July 28, 2015, Willie Parker shot Michel at the Kansas University Medical Center. It was a coincidence that they met at the K.U. Medical Center. Mr. Parker was arrested approximately one week after the shooting. Ms. Ziade testified that the investigating detective informed her that the motive for the shooting was that Mr. Parker felt disrespected by Mr. Ziade, so he killed him. Mr. Parker has been charged with the crime and found competent to stand trial; his trial is set for July 12, 2017.

Ms. Ziade testified that an investigation into the shooting was conducted on behalf of Defendant First Class. The drivers were all brought into a room and interviewed. Ms. Ziade testified that attorney Ben Schmidt was representing her, and she further testified that attorney Ben Schmidt was working with attorneys Edward Williams and Gregory Eufinger.

A certified copy of ASI policy number GL-0240000043-01 issued to First Class appears in the docket as exhibit "B" to ASI's Complaint for Declaratory Judgment. (Doc. No. 1-2, filed 1/24/16, page 1 of 66). The policy was issued by Integrated Insurance Agency located in Missouri, and delivered to First Class at its mailing address located in

4

Missouri. The policy period is October 21, 2014 to October 21, 2015. The policy provides Commercial General Liability Coverage, subject to all of its terms, conditions, limitations, definitions and exclusions. The Schedule of Forms and Endorsements lists the various forms and endorsements which were part of the policy as originally issued. Among the listed forms and endorsements are the following:

> CG 00 01 04/13 Commercial General Liability Coverage Form
>
> GL 00 04 06/13 Exclusion – Assault Or Battery
>
> GL 00 01 01/09 Sexual and/or Physical Abuse Liability Coverage Form.

The policy also includes Endorsement number 1, effective May 8, 2015. Endorsement number 1 states as follows:

> The following forms(s) have been deleted: GL 00 01 01/09, Sexual and/or Physical Abuse Liability Coverage Form.
>
> The following form(s) have been added: CG 21 46 07/98, Abuse Or Molestation Exclusion.
>
> All other terms and conditions remain the same.

The endorsement shows that this policy change resulted in a premium credit to First Class of $1,092.00. The insuring agreement of the policy states as follows:

> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
> **1. Insuring Agreement**
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. * * *

> **b.** This insurance applies to "bodily injury" and "property damage" only if:
> **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; [and]
> **(2)** The "bodily injury" or "property damage" occurs during the policy period; * * *

The policy Exclusion – Assault Or Battery states, in relevant part, as follows:

> **Exclusion – Assault Or Battery**
> 1. This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising out of or resulting from:
> (a) any actual, threatened or alleged assault or battery committed by any insured;
> (b) the failure of any insured or anyone else for whom the insured is or could be held legally liable to prevent or suppress any assault or battery;
> (c) the failure of any insured or anyone else for whom the insured is or could be held legally liable to render or secure medical treatment necessitated by any assault or battery;
> (d) the rendering of medical treatment by any insured or anyone else for whom the insured is or could be held legally liable that was necessitated by any assault or battery;
> (e) The negligent: (i) employment; (ii) investigation; (iii) supervision; (iv) training; (v) retention; of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by 1.(a), (b), (c) or (d) above;
> (f) the vicarious liability of any insured arising out of 1.(a), (b), (c) or (d) above;
> (g) any other cause of action or claim arising out of or as a result of 1.(a), (b), (c), (d) or (e) above.
>
> 2. We shall have no duty to defend or indemnify any claim, demand, suit, action, litigation, arbitration, alternative dispute resolution or other judicial or administrative proceeding seeking damages, equitable relief, injunction relief, or administrative relief where:
> (a) Any actual or alleged injury arises out of any combination of assault or battery-related cause and a non-assault or battery-related cause;
> (b) Any actual or alleged injury arising out of a chain of events which includes assault or battery, regardless of whether the

assault or battery is the initial precipitating event or a substantial cause of injury; or
(c) Any actual or alleged injury arising out of assault or battery as a concurrent cause of injury, regardless of whether the assault or battery is the proximate cause of injury.

This exclusion does not apply to assault or battery committed by any insured, or by a person for whom any insured is or ever was legally responsible, resulting from the use of reasonable force to protect person or property.

The policy Exclusion for Abuse Or Molestation states, in part, as follows:

**ABUSE OR MOLESTATION EXCLUSION**
This endorsement modifies insurance provided under the following: Commercial General Liability Coverage Part.
The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A -- Bodily Injury and Property Damage Liability * * *
This insurance does not apply to "bodily injury" [or] "property damage" arising out of:
1. The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or
2. The negligent: a. Employment; b. Investigation; c. Supervision; d. Reporting to proper authorities; or failure to so report; or e. Retention, of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph 1. above.

On December 3, 2015, plaintiff ASI received a letter dated November 11, 2015 from attorney Edward Williams. Attached to and enclosed with the letter from Mr. Williams was the e-mail correspondence dated November 10, 2015 from attorney Ben Schmidt to attorney Edward Williams. These letters constitute the first notice to plaintiff ASI of the shooting death of Michel Ziade, and the claim presented on behalf of defendant TZ, a minor by attorney Ben Schmidt, resulting from the shooting death of Mr. Ziade.

7

Mr. Schmidt's claim letter addressed to defendant First Class dated November 10, 2015 states, in part, as follows:

> Michel Ziade was the natural father of [TZ] and [TZ] is his only child, natural or adopted. Michel lost his life as a result of being shot by Willie Parker. Willie Parker was an employee of your client [First Class] at the time he committed the assault on and killed my clients (sic) decedent. This is particularly troubling considering the know (sic) fact that Mr. Parker had an open hatred of white people (including Michel Ziade) and had exhibited strange behavior over a long period of time while employed by your client [First Class]. Any supervision by your client [First Class] would have disclosed and caused corrective action. Any reasonable supervision or retention practice would have avoided this tragedy.
>
> We hereby demand $1,000,000 from your client [First Class] or your clients (sic) insurer. Please identify the name of any liability insurer your client. (sic). In exchange for payment of this amount we will offer a full release for the benefit of your client [First Class]. Naturally this case have (sic) a value far beyond the demand, for this reason this offer will be withdrawn on Friday, December 11, 2015 at 5 p.m. CST. Once withdrawn it will never be made again.
>
> /s/ Ben Schmidt

Attorney Edward Williams' letter to plaintiff ASI dated November 11, 2015 states, in part, as follows:

> Please be advised that I [attorney Williams] represent [First Class] and Kristen Ziade. Any communication with any of these entities or persons must be directed to me.
>
> Enclosed, please find a copy of a time limit demand that I received from Ben Schmidt, attorney for [TZ]. My investigation has revealed that your insured / my client [First Class] is at fault for the death of Michel Ziade.
>
> As you can see from the enclosed, Mr. Schmidt is claiming that your insured is responsible for this act of workplace

> violence as a result of the negligent hiring and retention practices of your insured. * * *
>
> This incident is clearly covered under the "Sexual and/or Physical Abuse Liability Coverage Form." In that form, your company [ASI] agreed to pay all sums for damages to any person arising out of physical abuse caused by one of the employees arising out of the failure to supervise. The policy defines physical abuse to mean assault and battery or deliberate touching.
>
> Michel Ziade, the natural father of TZ, was shot and killed by Willie Parker, an employee of your insured. Michel Ziade was on a personal, non-business related, errand at the time of the shooting. The shooting is an assault and/or battery.
>
> Willie Parker was apparently a very strange, highly erratic, likely racist and militant individual. Mr. Parker also openly stated his displeasure and dislike of Michel Ziade. There was no supervision of Mr. Parker.
>
> Mr. Schmidt is correct when he states that the insured failed to supervise Mr. Parker and that such lack of supervision lead to the assault and battery, and subsequent death, of Michel Ziade. As such we hereby demand that you pay the demand set forth in the email I received from Mr. Schmidt. Failure to do so will likely result in a judgment far in excess of the policy limits.
>
> /s/ Edward A. Williams.

The law firm of Sanchez Daniels & Hoffman, LLP ("SD&H"), serves as coverage counsel to plaintiff ASI. SD&H wrote a letter on behalf of plaintiff ASI to Attorney Williams dated December 11, 2015. That letter informed Mr. Williams that the policy as originally written included the Sexual and/or Physical Abuse Liability Coverage Form. However, the policy was endorsed effective May 8, 2015 to delete that Coverage Form and replaced it with the Exclusion for Abuse Or Molestation. The December 11, 2015 letter quotes the policy exclusion for Assault Or Battery, and the policy exclusion for Abuse Or Molestation,

as well as the policy condition for prompt notice of occurrence, claim and suit. This lawsuit followed shortly thereafter.

## III. Standard

Summary judgment is appropriate if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). The facts and inferences are viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–90 (1986). The moving party must carry the burden of establishing both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Matsushita, 475 U.S. at 586–90.

A nonmoving party must establish more than "the mere existence of a scintilla of evidence" in support of its position. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

> The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (citations and quotations omitted).

## IV. Discussion

Under Missouri law, which applies to this action, a liability insurer has two distinct duties: the duty to defend and the duty to indemnify. Trainwreck West, Inc. v. Burlington

Ins. Co., 235 S.W.3d 33, 44 (Mo. Ct. App., 2007). The obligation of the insurer to defend arises only as to claims and suits for damages covered or potentially covered under the policy. McCormack Baron Management Services, Inc. v. Am. Guarantee & Liab. Ins. Co., 989 S.W.2d 168, 170 (Mo., 1999). There is no duty to defend a suit where the facts fail to bring the case within the coverage of the policy. Trainwreck, 235 S.W.3d at 42. If there is no duty to defend, there is no duty to indemnify. Id. at 44.

Plaintiff correctly notes that the insured's owners (Kristen and Michel Zaide) decided to remove coverage for Sexual and/or Physical Abuse, and such removal of coverage was effective months before Michel Zaide was killed. Thus, the insured could not be covered if the incident was classified as Sexual and/or Physical Abuse under the old, no-longer-effective policy. Furthermore, as discussed by plaintiff in its motion for summary judgment, the policy Exclusion for Assault Or Battery clearly and unambiguously excludes coverage for the shooting death of Mr. Ziade. Plaintiff notes that similar policy exclusions have been upheld by Missouri courts, and both of the attorneys for T.Z. and the insured stated in their initial demand letters that the actions committed by Mr. Parker constituted an assault and battery. Because the policy exclusion for Assault Or Battery is applicable, and only one exclusion is necessary to preclude coverage, plaintiff's motion for summary judgment must be granted. Spirtas Co. v. Nautilus Ins. Co., 715 F.3d 667, 672-73 (8th Cir. 2013).

**V.   Conclusion**

Accordingly, for all the reasons stated herein, plaintiff's motion for summary judgment is **GRANTED**.   Judgment is entered by this Court, finding: (1) Plaintiff owes no

duty to defend First Class Medical Transportation, Inc., n/k/a Express Medical Transportation, Inc. ("First Class") with respect to the claim presented by TZ, a minor; and (2) Plaintiff owes no duty to indemnify First Class for its liability, if any, to TZ, a minor, resulting from the shooting death of Michel Ziade, which was committed by Willie Parker on July 28, 2015.

    **IT IS SO ORDERED.**


Dated: June 12, 2017                      **/s/ Fernando J. Gaitan, Jr.**
Kansas City, Missouri                Fernando J. Gaitan, Jr.
                                                        United States District Judge